IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> OHIO SECURITY INSURANCE COMPANY, <br><br> Serve: <br> Corporation Service Company <br> 100 Shockoe Slip, FL 2 <br> Richmond, VA 23219-4100 <br><br> and <br><br> SOUTHEASTERN SERVICES, LLC, <br><br> Serve: <br> George J. Brooks, III <br> 1304 Jamestown Rd. #A <br> Williamsburg, VA 23185-3309 <br><br> Defendants. | Civil Action No.: 4:23-cv-00121 |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff The Travelers Indemnity Company of America ("Travelers"), by counsel, states as follows as its Complaint against Ohio Security Insurance Company ("Ohio") and Southeastern Services, LLC ("Southeastern"):

**I.   Parties**

1. Plaintiff Travelers is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business in Connecticut.

2. Defendant Ohio is a corporation organized under the laws of New Hampshire with its principal place of business in New Hampshire.

3. Defendant Southeastern is a limited liability company organized under the laws of the Commonwealth of Virginia with its principal place of business in the Commonwealth of Virginia.

## II.   Jurisdiction and Venue

4. This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

5. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the plaintiff and the defendant and the amount in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000.00).

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## III.   Facts

### A.   The Underlying Suits

7. On or about August 27, 2021, Brian Conlon filed suit against Fairfield and Ronald Lukas in the Circuit Court for Williamsburg/James City County seeking damages of $450,000.00 for injuries he allegedly sustained in a slip and fall accident on or about October 14, 2019 at Wyndham Patriots' Place (the "Resort"). The matter, which remains pending, is styled *Brian Conlon v. The Fairfield Williamsburg Property Owners Association, Inc. d/b/a Club Wyndham Patriots' Place and Ronald Lukas*, Case No. CL21001492 (the "Fairfield Suit"). A copy of the Complaint is attached as **Exhibit A**.

8. The Fairfield Suit Complaint alleges that Fairfield owned, operated, maintained, managed and/or otherwise controlled the Resort.

9. The Fairfield Suit Complaint alleges that Ronald Lukas was the president of Fairfield.

10. The Fairfield Suit Complaint alleges that Lukas and Fairfield were responsible for maintenance and upkeep of the Resort.

11. The Fairfield Suit Complaint alleges that Conlon was an overnight guest of the Resort when he fell into an uncovered and exposed hole in a grassy area near his accommodation.

12. The Fairfield Suit Complaint alleges that Fairfield knew or should have known that the uncovered and exposed hazard constituted an unsafe condition and the premises needed inspection, maintenance, and repair.

13. The Fairfield Suit Complaint alleges that Fairfield did not use ordinary care to inspect, maintain and repair the grounds and unsafe conditions, or to warn persons on the grounds of hazards and unsafe conditions.

14. The Fairfield Suit Complaint alleges that Fairfield's negligence caused Mr. Conlon injury.

15. On or about August 27, 2021, Fairfield and Lukas filed a third-party complaint against SSL in the Fairfield Suit (the "Third-Party Complaint").

16. On or about September 3, 2021, Brian Conlon filed suit against SSL in the Circuit Court for Williamsburg/James City County seeking damages of $450,000.00 for injuries he allegedly sustained in a trip and fall accident on or about October 14, 2019 at the Resort. The matter, which remains pending, is styled *Brian Conlon v. Southeastern Services, LLC*, Case No. CL21001770 (the "SSL Suit," together with the Fairfield Suit, the "Underlying Suits"). A copy of the Complaint is attached as **Exhibit B**.

17. The SSL Suit Complaint alleges that SSL was engaged to provide landscape services and maintenance, including but not limited to, inspecting, repairing, and maintaining the ground in and around the Resort.

18. The SSL Suit Complaint alleges that Conlon was an overnight guest of the Resort when he fell into an uncovered and exposed hole in a grassy area near his accommodation.

19. The SSL Suit Complaint alleges that SSL knew or should have known that the uncovered and exposed hazard constituted an unsafe condition and the premises needed inspection, maintenance, and repair.

20. The SSL Suit Complaint alleges that SSL did not use ordinary care to inspect, maintain and repair the grounds and unsafe conditions, or to warn persons on the grounds of hazards and unsafe conditions.

21. The SSL Suit Complaint alleges that SSL's negligence caused Conlon injury.

22. On May 12, 2022, the SSL Suit and the Fairfield Suit were consolidated.

23. On or about December 14, 2022, Fairfield and Lukas filed a crossclaim against SSL (the "Crossclaim").

24. The Crossclaim (and the Third-Party Complaint) alleges that the property at issue was maintained by SSL pursuant to a Landscape Services Agreement and that SSL breached the agreement by failing to locate and repair the hole in which Mr. Conlon allegedly fell.

25. The Crossclaim (and the Third-Party Complaint) alleges that if Fairfield is found liable to Mr. Conlon, SSL is liable to Fairfield for contribution or indemnification.

### B. The Landscape Service Agreement

26. Fairfield and SSL entered into an agreement to provide certain horticultural and other services at the Resort, effective December 14, 2017 (the "Landscape Service Agreement"). A copy of the Landscape Service Agreement is attached hereto as **Exhibit C**.

27. The Landscape Service Agreement provides, in pertinent part, the following:

8. INDEMNIFICATION OF OWNER

   a. Contractor shall defend, indemnify, and hold harmless Association, its management firm, and each of their respective subsidiaries, parents, affiliated entities, officers, agents, employees and representatives (collectively, the "**Indemnitees**") from and against any and all claims, lawsuits, losses, damages, liabilities, causes of action, counterclaims, debts, dues, reckonings, covenants, contracts, controversies, judgments, demands, costs or expenses whatsoever, including, without limitation, attorney fees and costs (collectively, the "**Claims**") that may be sustained by or recovered against any of the Indemnitees, whether or not covered by insurance by reason of (i) this Agreement; (ii) Contractor's performance of the Services; (iii) any and all injury... arising directly or indirectly from or in connection with this Agreement or with the Services performed under this Agreement, whether or not caused by Contractor or any of its employees, subcontractors, or agents; … (v) Contractor's breach of default of any of the covenants, agreements, terms, provisions, representations or warranties contained in this Agreement. Contractor understands and agrees that its obligation to defend, indemnify, and hold harmless the Indemnities as state herein shall apply and become operative immediately upon any of the Indemnities providing notice to Contractor of the Claims asserted against any of the Indemnitees by reason of items (i) through (v) above, regardless of whether an investigation by Contractor or its agents indicates that the allegations related to the claims lack merit.

                                         ***

9. INSURANCE AND TAXES

   a. During the term of this Agreement, Contractor shall secure and maintain comprehensive general liability insurance, including coverage for independent contractors, contractual liability, personal or bodily injury, products liability, premises/operations, completed operations and broad form property damage with combined single limits of not less than one million dollars ($1,000,000) per occurrence. . . . All such insurance policies shall name Association, Association's management firm and their respective parent companies, subsidiaries, affiliates, officers, directors, employees and agents as additional insureds, and copies of all certificates of insurance, including renewals, should be sent to the Resort. The insurance afforded to Association's management firm shall be primary for all purposes. . .

## "EXHIBIT A"

**Contractor shall provide the following Services . . .**
1. **Landscape Maintenance Program**
   a. **Turf Care Specifications**
      i. **General**
         1. All areas shall be inspected weekly for detection of disease, pests, improper irrigation, and other problems, and shall be properly treated to correct any observed problems upon discovery. The Resort's maintenance department shall be promptly notified of problems encountered and the corrective action taken.
         2. Any lawn area that dies or becomes unsightly due to negligence or improper maintenance procedures shall be replaced at the sole cost of Contractor.

***

**C.** **The Travelers Policy**

28. Travelers issued commercial insurance Policy No. I-660-0249L271-TIA-19 to "The Fairfield Williamsburg Property Owners Association" as Named Insured (the "Travelers Policy"). The Policy was effective from January 1, 2019 to January 1, 2020. A copy of the Policy is attached hereto as **Exhibit D**.

29. Relevant to this Complaint, the Travelers Policy provides Commercial General Liability Coverage which contains the following insuring agreement:

> **SECTION 1 – COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1. **Insuring Agreement**
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

***

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

4. **Other Insurance**[1]

   If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

   \*\*\*

   b. **Excess Insurance**

      This insurance is excess over:

      **(1)** Any other insurance, whether primary, excess, contingent or on any other basis:

      That is available to the insured when the insured is added as an additional insured under any other policy, including any umbrella or excess policy.

      \*\*\*

      When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If not other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.   \*\*\*

8. **Transfer of Rights of Recovery Against Others to Us**

   If the Insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. . . .

   \*\*\*

---

[1] As modified by Other Insurance – Additional Insureds (CG D0 37 04 05) endorsement.

30. Travelers is currently providing a defense to Fairfield under the Policy in the Underlying Suits.

31. On January 25, 2020 and August 6, 2020, Travelers tendered the defense of the Underlying Suits to SSL, requesting SSL and their carrier defend and indemnify Fairfield and Lukas as additional insureds.

32. To date, SSL and Ohio have refused to provide a defense to Fairfield against the Underlying Suits.

**D.    The Ohio Policy**

33. Ohio issued commercial insurance Policy No. BKS (2) 55 72 76 58 to "Southeastern Services LLC" as Named Insured (the "Policy"). The Policy was effective from September 14, 2019 to September 14, 2020. A copy of the Policy is attached hereto as **Exhibit E**.

34. The Policy provides in relevant part:

**Commercial General Liability Extension**

**G.  ADDITIONAL INSUREDS – BY CONTRACT, AGREEMENT OR PERMIT**

1. Paragraph **2.** under **Section II – Who Is An Insured** is amended to include as an insured any person or organization whom you have agreed to add as an additional insured in a written contract, written agreement or permit. Such person or organization is an additional insured but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part by:

   a. Your acts or omissions, or the acts or omissions of those acting on your behalf, in the performance of your on going operations for the additional insured that are the subject of the written contract or written agreement provided that the "bodily injury" or "property damage" occurs, or the "person and advertising injury" is committed, subsequent to the signing of such written contract or written agreement; or . . .

***

### IV. Count I – Declaratory Judgment

35. Travelers incorporates and realleges the allegations made in the preceding paragraphs.

36. An actual controversy exists between Travelers and the defendants concerning whether Ohio owes a duty under the Ohio Policy to defend and indemnify Fairfield as an additional insured for liability alleged in the Underlying Suits.

37. There is no adequate remedy, other than that requested herein, by which these controversies may be resolved.

38. Travelers seeks a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Ohio owes a duty to defend and indemnify Fairfield as an additional insured for liability alleged in the Underlying Suits.

39. Travelers is entitled to the declaration it seeks because:

(A) Fairfield qualifies as an additional insured under endorsement CG 88 10 04 13, Commercial General Liability Extension, to the Ohio Policy because (i) it is a "person or organization whom you have agreed to add as an additional insured in a written contract, written agreement or permit"; and (ii) the Underlying Suits involve allegations of "'bodily injury' [to Conlon]…caused in whole or in part by…[SSL's] acts or omissions, or the acts or omissions of those acting on [SSL's] behalf…in the performance of [SSL's] ongoing operations."

(B) These allegations are not excluded by the provisions of the Ohio Policy.

40. Travelers further seeks a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Ohio must solely bear the cost of defending Fairfield against the allegations in the Underlying Suits since the Ohio Policy provides primary coverage and the Travelers Policy provides excess coverage as provided for in the "Other Insurance" provision in the Travelers Policy.

9

## V.   Count II – Breach of Contract (Subrogation)

41. Travelers incorporates and realleges the allegations made in the preceding paragraphs.

42. SSL was contractually obligated to include Fairfield as an additional insured on its general liability policy.

43. Fairfield qualified as an additional insured under the Commercial General Liability Extension in the Ohio Policy issued to SSL.

44. The Ohio Policy covered Fairfield for liability for "'bodily injury' . . . caused in whole or in part by . . . [SSL's] acts or omissions, or the acts or omissions of those acting on [SSL's] behalf . . . in the performance of [SSL's] ongoing operations."

45. The Underlying Suits allege Fairfield was liable for bodily injury to Conlon caused in whole or in part by SSL's acts or omissions, or the acts or omissions of those acting on SSL's behalf, in the performance of SSL's ongoing operations for Fairfield.

46. The allegations in the Underlying Suits trigger Ohio's duty to defend Fairfield under the Ohio Policy.

47. The Ohio Policy provided primary insurance to Fairfield.

48. Fairfield's coverage under the Travelers Policy was secondary to its primary coverage under the Ohio Policy.

49. Ohio was contractually obligated to defend Fairfield, but Ohio has failed and refused to defend Fairfield.

50. To date, Ohio has not paid any costs or expenses related to Fairfield's legal defense, and thereby breached its obligation to defend Fairfield in the Underlying Suits.

51. Travelers has made payments on behalf of Fairfield to defend Fairfield against the Underlying Suits under the Travelers Policy.

52. All of Fairfield's rights to recover against Ohio were transferred to Travelers, pursuant to the following provisions of the Travelers Policy: (1): Condition 4(b) Other Insurance – Excess Insurance (providing that if, as here, "no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers"); and (2) Condition 8 (transferring to Travelers Fairfield's right to recover "all or part of any payment" made by Travelers under the commercial general liability coverage part).

53. Travelers, as Fairfield's subrogee, has a right to recover damages from Ohio for breach of Ohio's contractual obligation to defend Fairfield in the Underlying Suits in breach of the Ohio Policy.

54. Travelers is entitled, under the doctrine of equitable subrogation, to recover from Ohio all amounts which it has expended to defend Fairfield in the Underlying Suits.

WHEREFORE, The Travelers Indemnity Company of America respectfully requests that this Court:

1. Declare that Ohio has a duty to defend and indemnify Fairfield for the Underlying Suits under the Ohio Policy, such that Ohio must bear the sole cost of defending Fairfield against the Underlying Suits; and

2. Enter an order finding Ohio breached the Ohio Policy by failing to provide a defense and awarding amounts to be determined at trial that were incurred in connection with Travelers providing a defense to Fairfield in the Underlying Suits; and

3. Award such other and further relief as this Court deems just and proper.

                **Respectfully submitted,**

                **THE TRAVELERS INDEMNITY COMPANY OF AMERICA**


                **By:** /s/ John B. Mumford, Jr.
                            **Counsel**

John B. Mumford, Jr. (VSB No. 38764)
Jessica A. Swauger (VSB No. 89612)
HANCOCK, DANIEL & JOHNSON, P.C.
4701 Cox Road, Suite 400
Glen Allen, VA  23060
jmumford@hancockdaniel.com
jswauger@hancockdaniel.com
Telephone: (804) 967-9604
Facsimile:  (804) 967-9888
*Counsel for The Travelers Indemnity Company of America*